| | | |
|---|---|---|
| **BETA ELECTRIC CORPORATION**<br><br>Parte peticionaria<br><br>**v.**<br><br>**MUNICIPIO DE GURABO**<br><br>Parte recurrida | KLCE202500567 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Caso Núm.:<br>**CG2024CV03714**<br><br>Sobre: **SENTENCIA DECLARATORIA** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de junio de 2025.

Comparece ante nos Beta Electric Corporation, en adelante, Beta o peticionaria, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala de Caguas, en adelante, TPI-Caguas, en la que dejó sin efecto la anotación de rebeldía y el señalamiento de juicio en rebeldía, solicitada por Beta y ordenó el traslado del caso al TPI-San Juan.

Por los fundamentos que expondremos a continuación, *expedimos el auto solicitado, y revocamos el dictamen recurrido.*

### I.

Los hechos que nos ocupan para la resolución de este pleito son los siguientes.

El 2 de junio de 2022, la peticionaria fue contratada, por la Autoridad de Energía Eléctrica de Puerto Rico, en adelante, AEE, bajo el contrato Master Service Agreement número 093807. Este contrato se creó con el fin de realizar trabajos de reparación del

alumbrado público en diversos sectores, incluyendo al Municipio de Gurabo, en adelante, Municipio o recurrido.[1]

Posteriormente, durante el mes de junio del año 2024, la peticionaria alegó que el Municipio le informó que procedía la imposición de arbitrios de construcción sobre los trabajos que iba a ejecutar para la AEE. Ante este cuadro, el 1 de julio de 2024, Beta adujo que cursó una comunicación dirigida al Municipio. En la misma, expresó que los trabajos a ser realizados por Beta en el Municipio no estaban sujetos al pago de arbitrios de construcción. Beta planteó que no era contribuyente de la imposición de arbitrios por estar exenta del pago bajo la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, Ley Número 83 de mayo de 1941, en adelante, Ley 83-1941, 22 LPRA sec. 192 *et seq.*.[2]

Del pliego surge que, el 18 de septiembre de 2024, el Municipio determinó que las obras estaban sujetas al pago de arbitrios de construcción conforme lo establece el Código de Municipios de Puerto Rico, Ley 107-2020, 21 LPRA sec. 7001 *et seq.*, en adelante, Código Municipal. Además, estableció que el valor de la obra para fines de la imposición del arbitrio de construcción fue de un millón trescientos sesenta y cuatro mil cuatrocientos noventa y nueve dólares con cincuenta centavos ($1,364,499.50). Sin embargo, el arbitrio de construcción inicial era de seiscientos ocho mil doscientos veinticinco dólares ($68,225.00).[3]

Ahora bien, establecidos los hechos que son medulares para el entendimiento del caso de marras, el mismo tiene su génesis el 5 de octubre de 2024 cuando Beta, presentó su *"Demanda"* sobre *Sentencia Declaratoria y Arbitrios de Construcción* en contra del

---

[1] Apéndice del Recurso, pág. 14.
[2] *Id.,* pág. 15.
[3] *Id.*

recurrido.[4] No obstante, la misma fue enmendada, el 29 de noviembre de 2024.[5]

En su "Demanda Enmendada", Beta solicitó al TPI-Caguas, la exención en el pago de arbitrios de construcción aplicable a la AEE por virtud de su ley habilitadora. Por entender que sus trabajos no son obras de construcción, sostuvo que la AEE era responsable del pago de los arbitrios de construcción que fuesen aplicables a las obras que son suyas. Adicional, solicitó que se le impusiera al Municipio el pago de honorarios de abogado por concepto de temeridad.[6]

Como parte del trámite procesal, el 18 de diciembre de 2024, la parte peticionaria diligenció el emplazamiento al Municipio.[7] No obstante, al no haber respuesta por parte del recurrido en el término correspondiente, la peticionaria presentó el 26 de febrero de 2025, una *"Solicitud de Anotación de Rebeldía"*.[8] En vista de lo anterior, el TPI-Caguas determinó el 28 de febrero de 2025, que procedía anotarle la rebeldía a la parte recurrida y pautó juicio en rebeldía para el 1 de mayo de 2025.[9]

Por lo anterior, el 21 de marzo de 2025, el Municipio presentó una *"Urgente solicitud de Paralización de los Procedimientos y Traslado al Amparo de la Ley 123 de 5 de agosto de 2016 y la Orden Administrativa OAJP-2016-009"*.[10] En la mencionada moción, el Municipio solicitó la paralización de los procedimientos y el traslado del pleito a la Sala Especializada de Asuntos Contributivos en el Tribunal de Primera Instancia, Sala de San Juan.

---

[4] Apéndice del recurso, pág. 1.
[5] *Id.,* pág. 14.
[6] *Id.,* pág. 26.
[7] Apéndice del recurso, Anejo III.
[8] *Id.,* pág. 30.
[9] *Id.,* pág. 31.
[10] *Id.,* pág. 32.

En respuesta, la peticionaria presentó *"Oposición a Moción en Solicitud de Paralización de los Procedimientos y Traslado al Amparo de la Ley 123 de 5 de agosto de 2016".*[11] Entre sus argumentos, la peticionaria sostuvo que la solicitud presentada por el Municipio era tardía toda vez que según lo dispuesto en la Regla 3.6 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 3.5, el Municipio tenía treinta (30) días a partir de la notificación de la demanda para solicitar el traslado. Fundamentó, además, que la Ley 123 de 5 de agosto de 2016, en adelante, Ley 123-2016, no aplicaba a controversias contributivas de los municipios. Por otro lado, Beta arguyó que el Municipio estaba en rebeldía y, por tanto, no tenía la facultad en derecho para presentar la moción de traslado.

Así las cosas, el 7 de abril de 2025 el recurrido presentó *"Moción Solicitando Relevo de Anotación de Rebeldía y que se Deje sin Efecto Señalamiento de Juicio en Rebeldía y Reiterando Solicitud de Traslado".*[12] Solicitó al Foro Primario que se dejara sin efecto la anotación de rebeldía, el juicio señalado previamente, se ordenara la paralización de los procedimientos y que se trasladara el caso a la Sala Especializada de Asuntos Contributivos en el Tribunal de San Juan.[13] Por otra parte, ese mismo día el Municipio también presentó *"Contestación a la Demanda Enmendada".*[14]

Posteriormente, el 2 de mayo de 2025 el TPI-Caguas notificó una *"Orden de Traslado",* con el fin de transferir el caso de marras a la Región Judicial de San Juan, Sala Especializada en Asuntos Contributivos, conforme a la Ley 123-2016, supra.[15] Igualmente, ese mismo día el Foro Primario, mediante una *"Resolución*

---

[11] Apéndice del recurso, pág. 36.
[12] *Id.,* pág. 44.
[13] *Id.,* pág. 59.
[14] *Id.,* pág. 60.
[15] *Id.,* pág. 69.

*Interlocutoria"*, dejó sin efecto la anotación de rebeldía y el señalamiento de juicio.[16]

En desacuerdo con el dictamen emitido por el TPI-Caguas, Beta presentó el 8 de mayo de 2025, una *"Solicitud de Reconsideración"*.[17] El 12 de mayo de 2025, el Municipio presentó su *"Oposición a Solicitud de Reconsideración Sobre Orden de Traslado"*.[18] Finalmente, el 13 de mayo de 2025, el Foro Recurrido declaró *"No Ha Lugar"* la solicitud de reconsideración.[19]

Inconforme, la parte peticionaria radicó un recurso de *Certiorari* ante este Tribunal, solicitando que revisemos el dictamen emitido por el TPI-Caguas. En el mismo, nos hace los siguientes señalamientos de error:

> **Primer Error:** Erró el Tribunal de Primera Instancia al ordenar el traslado del pleito a la Sala Especializada cuando la solicitud de traslado la presentó el Municipio estando en rebeldía.
> **Segundo Error:** Erró el Tribunal de Primera Instancia al ordenar el traslado del pleito a la Sala Especializada cuando la solicitud de traslado se presentó 63 días después de expirado el término que provee la Regla 3.6 de Procedimiento Civil para solicitarlo.
> **Tercer Error:** Erró el Tribunal de Primera Instancia al ordenar el traslado del pleito a la Sala Especializada cuando Ley 123-2016 no aplica a controversias de arbitrios de construcción de los Municipios.
> **Cuarto Error:** Erró el Tribunal de Primera Instancia al no tomar en consideración y darle el justo y debido peso que se merecen los dos casos resueltos por el Tribunal de Apelaciones sobre la misma materia, abusando así de su discreción.

El 29 de mayo de 2025, emitimos una *"Resolución"* en la que le concedimos a la parte recurrida hasta el 6 de junio de 2025 para expresarse con relación al recurso de *Certiorari* que nos ocupa. El Municipio compareció ante nos mediante *"Memorando en Oposición a la Expedición del Auto de Certiorari"*.

---

[16] Apéndice del recurso, pág. 72.
[17] *Id.*, pág. 73.
[18] *Id.*, pág. 81.
[19] *Id.*, pág. 87.

Con el beneficio de la comparecencia y exposición de las posturas de ambas partes, procedemos a resolver.

**II.**

**A. Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. De Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.
*BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023)

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio et at.*, 211 DPR 871,

903 (2023); *Zorniak Air Servs. V. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Sala Especializada en Asuntos Contributivos y Delitos Económicos

La Ley 123-2016, supra, tuvo como propósito enmendar el Artículo 5.005 de la Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 2, en adelante, Ley Núm. 201-2003. Esta Ley creó una Sala Especializada con el propósito de "promover que los tribunales de justicia ejerzan su rol con el mayor nivel de conocimiento y peritaje posible en controversias de materia contributiva que surjan de leyes especiales". Véase Exposición de Motivos de la Ley 123-2016, supra. Por medio de la creación de la Sala Especializada, se pretendió "asegurar la aplicación uniforme del Derecho Contributivo y la solución expedita de las controversias contributivas que surjan de cualquier ley que imponga algún tipo de contribución o tributo a favor del Estado Libre Asociado de Puerto Rico, o de cualquiera de sus *instrumentalidades o subdivisiones...*". *Id.* De igual modo, la Sala Especializada atiende "controversias de naturaleza civil que surjan de cualquier ley especial" que conceda alguna exención o crédito contributivo. *Id.*

Cónsono con lo anterior, el 28 de octubre de 2016, la Hon. Maite D. Oronoz Rodríguez, Jueza Presidenta del Tribunal Supremo de Puerto Rico, emitió la Orden Administrativa Núm. OAJP-2016-009 con el propósito de implantar lo dispuesto en la Ley 123-2016, supra. A partir del 3 de noviembre de 2016, comenzaron las operaciones en la Sala Especializada, ubicada en la Sala Superior del Centro Judicial de San Juan. En armonía con

la mencionada Ley, la referida orden estableció que la Sala se compone de tres (3) salones de sesiones uno para atender asuntos contributivos de naturaleza civil. En los otros dos (2) salones se atenderán los casos contributivos de naturaleza penal y delitos económicos.

### C. Código Municipal de Puerto Rico

Es menester mencionar que, los municipios son entidades jurídicas creadas por la Asamblea Legislativa, en virtud del Artículo VI de la Constitución de Puerto Rico. Por tal razón, estos poseen sólo los poderes expresamente delegados por el legislador, en la forma y manera en que le fueron encomendados. *Ortiz v. Municipio de San Juan,* 167 DPR 609, 613 (2006); *First Bank de PR v. Mun. de Aguadilla,* 153 DPR 198 203 (2001). En otras palabras, los municipios, como entidades gubernamentales, no son soberanos por sí mismos, pues le corresponde a la Asamblea Legislativa determinar lo relativo a su organización y funcionamiento. *Ortiz v. Municipio de San Juan,* supra, pág.613.

Como corolario de lo anterior, la Asamblea Legislativa aprobó la Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico (Código Municipal), 21 LPRA sec. 7001 *et seq.* El referido estatuto, compila de manera sistemática, ordenada y actualizada, todas las leyes existentes y vinculadas a la organización, gobierno, administración y funcionamiento de los municipios. Código Municipal, supra, 21 LPRA sec. 7002. El esquema legal puesto en vigor amplió el grado de autonomía de los ayuntamientos con el propósito de que éstos asumieran una función central y fundamental en su desarrollo urbano, social y económico. Código Municipal, supra, sec. 7003. *Martínez Maldonado vs. CONSERVE,* 2024 TSPR 125, 214 DPR ___ (2024).

Por lo cual, en la consecución de sus objetivos y principios, el Código Municipal, supra, establece que sus disposiciones habrán de interpretarse "liberalmente a favor de los municipios", cumpliéndose, de este modo, la política pública de garantizarles las facultades jurídicas, fiscales y administrativas necesarias para salvaguardar el bienestar de sus habitantes. Código Municipal, supra, sec. 7005.

En lo que respecta al caso de marras, la Ley 107-2020, supra, reconoce la autonomía municipal en el ejercicio de sus poderes jurídicos, económicos y administrativos sobre asuntos relativos al bienestar general de sus habitantes. También, aclara que "[l]a autonomía municipal se ejercerá sin menoscabar los poderes y facultades de la Asamblea Legislativa para determinar lo relativo al régimen y función de los municipios, según establecido en la Sección 1 del Artículo VI de la Constitución de Puerto Rico". Código Municipal, supra, sec. 7002. **Asimismo, el Artículo 1.006 del Código Municipal resalta que los municipios son entidades jurídicas del gobierno local, subordinados a la Constitución de Puerto Rico y a sus leyes.** Código Municipal, supra, sec. 7011. "Cada municipio tiene capacidad legal independiente y separada del gobierno estatal de Puerto Rico [...]". *Id.* (Énfasis nuestro)

Es menester resaltar, que nuestra jurisprudencia estableció en *Coop. Ahorro Rincón v. Mun. Mayagüez* 200 DPR 546, 553 (2018), que se les confiere a los municipios la facultad de imponer ciertas contribuciones, derechos y licencias, entre las cuales se encuentra el arbitrio de construcción. Además, explicó que "el arbitrio de construcción es un impuesto que recae sobre el derecho a efectuar una obra de construcción dentro de los límites territoriales de un municipio". *Id.*

### D. Traslado de Pleitos

El ordenamiento procesal civil en Puerto Rico se basa en el principio de economía procesal, reconociendo la necesidad de resolver los litigios de manera justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1. Así, recae sobre nuestros tribunales el deber de garantizar la fluidez del litigio sin demoras innecesarias, enfocado en impartir la justicia de forma rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011); *Heftler Const. Co. v. Tribunal Superior*, 103 DPR 844, 846 (1975). Sin embargo, este deber viene acompañado del compromiso de las partes a través del mínimo de diligencia. Es decir, que les corresponde a las partes colaborar con nuestros tribunales en la tramitación justa, rápida y económica. *Bco. Des. Eco. v. AMC Surgery*, 157 DPR 150, 157. (2002). Como consecuencia de esta Regla nuestro ordenamiento procesal civil no permite que dos tribunales atiendan simultáneamente dos casos que versen sobre la misma controversia que pudieran provocar resultados contradictorios. *Rivera Schatz v. ELA y C. Abo. PR I*, 191 DPR 470, 478 (2014); *AMPR et als. v. Sist. Retiro Maestros II*, 190 DPR 88, 89 (2014). Evitar la duplicidad de pleitos "**es un principio cardinal de nuestro derecho procesal**". *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 434 (2012).

Cónsono a lo mencionado anteriormente, La Regla 3 de Procedimiento Civil, supra, gobierna lo relativo a la competencia del Tribunal de Primera Instancia. Dicha Regla tiene como finalidad establecer la ordenada tramitación de los asuntos judiciales dentro de nuestro sistema de jurisdicción unificada. *Rodríguez v. Cingular*, 160 DPR 167, 172 DPR 172 (2003); *LEMAR S.E. v. Vargas Rosado*, 130 DPR 203, 207 (1992).

Respecto a la competencia, dentro de nuestro sistema de jurisdicción única, la Regla 3.2 de Procedimiento Civil, supra, dispone:

### Regla 3.2 Competencia

Todo pleito se presentará en la sala que corresponda según lo dispuesto por ley y por estas reglas, pero no se desestimará ningún caso por razón de haberse sometido a una sala sin competencia.

Todo pleito podrá tramitarse en la sala en que se presente por convenio de las partes y la anuencia fundamentada del juez o jueza que presida dicha sala en ese momento. De lo contrario, será transferido por orden del juez o jueza a la sala correspondiente.

Específicamente, y pertinente al caso de marras, la **Regla 3.5** de Procedimiento Civil, supra, provee que *la competencia será la residencia de los demandados*, salvo contadas excepciones, a saber:

En todos los demás casos, *el pleito deberá presentarse en la sala en que tengan establecidas sus residencias las partes demandadas*, o alguna de ellas, con excepción de los casos de reclamación de salarios en los que el pleito se tramitará en la sala correspondiente a la residencia de la parte demandante. En los casos de alimentos, el pleito se tramitará en la sala correspondiente a la residencia de los(las) menores. Si ninguna de las partes demandadas reside en Puerto Rico o si la parte demandante ignora el lugar donde residen, el pleito se presentará en cualquier sala del Tribunal de Primera Instancia. En caso de que sean comerciantes, sociedades, corporaciones y asociaciones que tengan oficina o agente en diferentes lugares, podrán ser demandados en la sala del lugar en que tengan su centro de operaciones, oficina principal o agente, o en el lugar en que se hayan obligado.

*Rodríguez v. Cingular*, supra, pág. 174.

Énfasis nuestro.

KLCE202500567

Ahora bien, la **Regla 3.6** de Procedimiento Civil, supra, reglamenta lo relacionado con el traslado de pleitos. Esta Regla, establece lo siguiente:

(a) Presentado un pleito en una sala que no sea la apropiada, *si la parte demandada desea impugnar la falta de competencia de dicha sala,* **deberá** presentar una moción, dentro de un término no mayor de **treinta (30)** días a partir de la fecha de la notificación de la demanda y el emplazamiento, *para que el pleito sea trasladado a la sala correspondiente.* La moción deberá establecer en detalle los hechos que fundamentan la solicitud de traslado, a menos que de la faz de la demanda o de los autos del caso surjan los hechos en que se funda la referida moción. De no presentarse escrito alguno en oposición a la moción de traslado dentro de los diez (10) días de haberse notificado la referida moción, el caso se trasladará a la sala correspondiente.

La presentación de cualquier moción o de una alegación responsiva dentro del referido término de treinta (30) días no se considerará como una renuncia al derecho a solicitar el traslado. *Id.*

De esta manera, cuando los fines de la justicia así lo requieran, existen ciertas circunstancias bajo las cuales un caso podría ventilarse en una sala sin competencia. Regla 3.6(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 3.6 (b).

## III.

Por entender que los primero *tres (3) errores* se relacionan entre sí, los discutiremos conjuntamente. En síntesis, la parte peticionaria plantea en los errores señalados, que el Foro Primario

incidió al ordenar el traslado del pleito a la Sala Especializada, estando el Municipio en rebeldía y cuando la Ley 123-2016, *supra*, no aplica a controversias relacionadas a los arbitrios de construcción de los Municipios. *Le asiste la razón.*

Entendemos que de los documentos que conforman el expediente y el derecho aplicable, surge que, al trasladar el pleito a la Sala Especializada de San Juan, el Foro Primario soslayó el derecho vigente.

Surge del récord que la peticionaria presentó su *"Demanda"*, el **4 de octubre de 2024**. Luego instó una *"Demanda Enmendada"*, el **29 de noviembre de 2024**, sobre sentencia declaratoria y arbitrios de construcción en el TPI-Caguas. Esto, debido a que la parte demandada lo era el Municipio. El **18 de diciembre de 2024** se diligenció el emplazamiento contra el Municipio. Luego de estar debidamente emplazada, la parte recurrida tenía sesenta (60) días para contestar la demanda. Sin embargo, este término transcurrió por lo cual, la peticionaria solicitó la anotación de rebeldía a la parte recurrida. En consideración a lo anterior, el **28 de febrero de 2025,** el TPI-Caguas adjudicó la rebeldía y fijó fecha para juicio.

Sin embargo, no es hasta el **21 de marzo de 2025** que la parte recurrida se presentó con una solicitud de paralización de procesos y traslado del pleito al amparo de la Ley 123-2016, *supra.* La parte recurrida arguyó que, al tratarse de un caso sobre imposición de arbitrios de construcción y el correspondiente pago, el TPI-Caguas carecía de competencia para entender la materia objeto de controversia. Por todo lo cual, el TPI-Caguas levantó la rebeldía y ordenó el traslado del caso a la Sala Especializada localizada en el TPI-San Juan.

Lo cierto es que se ha cuestionado si la Ley 123-2016, *supra*, faculta las Salas Especializadas a atender controversias que involucren municipios. Dicho estatuto menciona que los casos *que se verán en la sala especializada son sobre instrumentalidades y subdivisiones del Estado Libre Asociado de Puerto Rico.* Esta no incorpora a los municipios por lo que entendemos no están incluidos. El Código Municipal, *supra*, reconoce expresamente que los Municipios son autónomos y de entidad jurídica de gobierno local, por lo cual no se consideran parte del ELA. En la presente causa, la peticionaria fue contrata por AEE para realizar unos trabajos donde estaba incluido el Municipio. El pleito fue instando en el TPI-Caguas porque el demandado lo era Municipio, por lo que la Región Judicial con competencia era Caguas.

Como esbozamos previamente, en el Código Municipal, *supra*, los municipios son autónomos dentro de su gobierno local por lo que no están bajo las subdivisiones del gobierno central, ya que tienen capacidad legal independiente y separada del gobierno estatal.

Por otro lado, la parte recurrida comparece transcurrido el término de solicitar traslado. Como bien establece en la Regla 3.6, *supra*, la parte que desee impugnar la competencia de un tribunal, tenía un término no mayor de treinta (30) días una vez fue notificado de la demanda y el emplazamiento.

No obstante, luego de anotada la rebeldía la parte recurrida solicitó el traslado del pleito. Concluimos, que la parte recurrida no tenía la facultad para solicitar el traslado porque ya había transcurrido el término dispuesto en la Regla 3.6 de Procedimiento Civil, *supra*.

En cuanto al *cuarto error*, la peticionaria indicó que erró el Foro Primario al no tomar en consideración a dos casos resueltos por el Tribunal de Apelaciones.[20] *Le asiste la razón.*

En el caso de *Charlie Car Rental v. Mun de Carolina*, KLCE202200371, (13 de mayo de 2022), se solicitó un traslado fuera del término que dispone la Regla 3.6 de Procedimiento Civil, *supra*. Se denegó el traslado, debido a que el mismo debía solicitarse en un término no mayor de treinta (30) días a partir de la fecha de la notificación de la demanda y el emplazamiento. Parecido a lo sucedido en el caso de marras, concluimos que la solicitud de traslado por parte de Municipio fue tardía.

Asimismo, el referido caso concluyó que la Ley 123-2016, *supra*, es cuestionable sobre si la misma alcanza los municipios, pues dicho estatuto menciona que le aplica a las instrumentalidades y subdivisiones del ELA, pero no menciona específicamente a los municipios. Referente al caso presentado ante nos, concluimos que los municipios no son parte del ELA.

En *Pfizer Pharmaceuticals LLC v. Mun. de Vega Baja*, KLCE201800058, (13 de febrero de 2018), se solicitó un traslado luego de haber pasado más de dos (2) meses de haberse diligenciado el emplazamiento. En este caso, el Foro Primario denegó el traslado. Por lo cual, el Foro Apelativo concluyó denegar el recurso bajo el fundamento de que el Tribunal de Primera Instancia no actuó arbitrariamente al denegar el traslado. Relacionado al caso de epígrafe, esta determinación nos aplica en cuanto al traslado tardío que solicitó Municipio. Entendemos que la parte recurrida no tenía facultad para solicitar el traslado debido a que había transcurrido el término de treinta (30) días dispuesto en la Regla 3.6 de Procedimiento Civil, *supra*.

---

[20] Véase casos KLCE202200371 y KLCE201800058

Aunque estas determinaciones no son vinculadas al caso de marras, su análisis nos persuade.

Por los fundamentos presentados, entendemos que el TPI-Caguas, es el foro con competencia donde se deben continuar los procesos del presente caso.

## IV.

Por los fundamentos antes esbozados, *expedimos el recurso solicitado*, y *revocamos la determinación recurrida*.

La Jueza Domínguez Irizarry *disiente con opinión escrita*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| BETA ELECTRIC CORPORATION<br><br>Peticionaria<br><br>v.<br><br>MUNICIPIO DE GURABO<br><br>Recurrida | KLCE202500567 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CG2024CV03714<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

### VOTO DISIDENTE JUEZ DOMÍNGUEZ IRIZARRY

Respetuosamente disiento de la mayoría de los miembros que componen este Panel en el caso de epígrafe. A mi entender, el Tribunal de Primera Instancia actuó correctamente al ordenar el traslado del caso de epígrafe a la Sala Especializada en Asuntos Contributivos y Delitos Económicos en el Tribunal Superior de San Juan. Me explico.

En el año 2016 la Asamblea Legislativa entendió la necesidad de proveer peritaje en nuestro sistema judicial al adjudicar controversias contributivas, estableciendo a su vez, mecanismos que aseguren la aplicación uniforme del Derecho Contributivo y la solución expedita de las controversias contributivas. Por ello, se dio a la tarea de enmendar el Artículo 5.005 de la Ley de la Judicatura, Ley 201-2003, mediante la creación de la Ley 123-2016. Al enmendar la Ley de la Judicatura, dicha Ley 123-2016 ordenó lo siguiente:



Artículo 1.

El Juez Presidente designará una (1) Sala Especializada en Asuntos Contributivos y Delitos Económicos en el Tribunal Superior de San Juan. Esta Sala atenderá las **controversias contributivas en casos civiles que surjan de cualquier ley que imponga cualquier tipo de contribución o tributo a favor del Estado Libre Asociado de Puerto Rico, cualquiera de sus**



**instrumentalidades o subdivisiones;** cualquier ley especial que conceda créditos contributivos, así como cualquier ley especial que conceda exención contributiva cobijadas por algún decreto, resolución o concesión de exención contributiva.

...

Dichas salas deberán ser presididas por jueces con adiestramiento y/o conocimiento especializado en alguna de las siguientes áreas: finanzas, contabilidad, auditoría, Derecho Tributario, u otra área relacionada según determinada por el Juez Presidente del Tribunal Supremo.

Para interpretar que el referido Artículo no le es de aplicación presente caso, la Mayoría buscó la definición de "municipio" en el Código Municipal de Puerto Rico del año 2020, **ley que no está sujeta de análisis ante nos**. Al hacerlo, olvidó el principio esencial establecido, el cual dispone que, al momento de interpretar una ley, la función principal de los tribunales debe consistir en lograr que prevalezca el propósito legislativo de esta. *Class Fernández v. Metro Health Care*, 2024 TSPR 63, 214 DPR ___ (2024); *Mapfre et al. v. ELA*, 198 DPR 88, 132 (2017); *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 208 (1988).

En nuestra tarea de interpretación de las leyes, los tribunales debemos tomar en consideración que todo acto legislativo persigue



un propósito. Por ello, es obligación de la Corte armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso, con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador. *Natal Albelo v. Romero Lugo y otros*, 206 DPR 465, 539 (2021); *Rexach v. Ramírez Vélez*, 162 DPR 130, 149 (2004), citando a *Pérez v. Mun. de Lares*, 155 DPR 698, 706-707 (2001).

Sabido es que, la exposición de motivos que acompaña una ley recoge generalmente la intención que inspiró su creación. *Brau, Linares v. ELA et als.*, 190 DPR 315, 339 (2014); *Chévere v. Levis*, 150 DPR 540, 525 (2000). Siendo así, los foros judiciales deben

examinar la misma para considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa, de modo tal, que nuestra interpretación asegure la efectividad de la intención del legislador. *Chévere v. Levis,* supra.

En la Exposición de Motivos de la Ley 123-2016, el legislador **expresamente** consignó la aplicación de la Ley a las legislaciones contributivas municipales, citando como ejemplos dos legislaciones de materia contributiva municipales a saber: la Ley de Contribución Municipal sobre la Propiedad de 1991 y la Ley de Patentes Municipales, ambas legislaciones hoy fundidas en el Código Municipal de 2020.

Así, expresamente el legislador dispuso que la Ley fue creada:

> "(A)los fines de promover que nuestros tribunales de justicia ejerzan su rol con el mayor nivel de conocimiento y peritaje posible en controversias de materia contributiva que surjan de leyes especiales tales como: i) la Ley Núm. 1-2011, según enmendada, conocida como el "Código de Rentas Internas de Puerto Rico de 2011"; ii) **la Ley Núm. 83-1991, según enmendada, conocida como "Ley de Contribución Municipal sobre la Propiedad de 1991";** iii) la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico"; iv) la Ley Núm. 73-2008, conocida como la "Ley de Incentivos Económicos para el Desarrollo de Puerto Rico"; v) la Ley Núm. 74-2010, conocida como "Ley de Desarrollo Turístico de Puerto Rico de 2010"; vi) **la Ley Núm. 113 de 10 de julio de 1974, según enmendada, conocida como "Ley de Patentes Municipales".**

> Exposición de Motivos de la Ley Núm. 123 del 5 de agosto de 2016 (2016 [Parte 2] Leyes de Puerto Rico 1415).



Ante la manifiesta expresión del legislador, entiendo que no es sostenible la interpretación dada por la Mayoría al estatuto, al concluir que, como el Municipios son autónomos y no una instrumentalidad del gobierno, el estatuto antes citado no le es de aplicación a casos que versen sobre arbitrios impuestos por los municipios. Ello pues, el legislador **expresamente** consignó en la Exposición de Motivos que el propósito de la creación de la Ley en cuestión es el establecimiento de una Sala Especializada en Asuntos

Contributivos y Delitos Económicos en el Tribunal Superior de San Juan para atender legislaciones contributivas municipales, entre otras.

La Mayoría ignora la intención del Legislador y produce un resultado erróneo al conferirle a la Ley 123-2016, un propósito que el legislador no pretendió darle. Por lo tanto, ante ese ejercicio errado de la función interpretativa de este Foro, disiento.

**IVELISSE DOMÍNGUEZ IRIZARRY**
Juez de Apelaciones